CITY OF DULUTH *vs.* WILLIAM DUNN and others.

. March 21, 1889. .

Sale—Construction of Contract.—After the burning of a grain elevator, the warehouseman sold, for the account of all whom it might concern, "the whole mass" of grain upon the premises, and which had been partially destroyed by the fire, with the condition that the purchasers should remove the same within 30 days. Contract construed as a sale and purchase of an option to take away, within the time specified, all of the grain desired by the purchasers, but not as an absolute purchase, including the ashes and grain already destroyed, and rendered worthless.

Same—Obligation of Buyers.—The purchasers were not obligated to remove such worthless matter from the premises, nor liable to the public after the same had become a nuisance, upon the ground of their ownership of it.

Appeal by defendants from a judgment of the district court for St. Louis county, where the action was tried by *Stearns,* J., without a jury.

*Walter Ayers,* for appellants.

*S. L. Smith,* for respondent.

DICKINSON, J. In November, 1886, two large grain elevators at Duluth, filled with grain, were destroyed by fire. Soon after this the parties operating these elevators published proposals, stating that "the grain remaining from the fire being liable to further loss and damage, the warehouseman will sell said grain for the account of all whom it may concern, for cash. Sealed bids for the whole mass, including wheat removed to dry-house, as one lot will be received," within a specified time. It was further stated that bidders must agree to report to the warehouseman "the weight of the grain if dried, or, if not dried, the weight in condition found, and must remove the same within thirty days from date." The defendants became the purchasers of the property on the conditions stated in the above proposal. Thereupon the defendants commenced removing such portions of the mass of grain as they desired, but permitted a large amount to remain and be consumed by fire. They continued the

work of removal for about 90 days, and, having then removed all that was worth separating and removing, they abandoned what then remained, consisting of a small amount of sound wheat, a large amount of wheat wet, and in different stages of decomposition, together with such as had been partially or wholly burned, all inseparably intermingled, and in which the fire was still smouldering. This mass became a public nuisance, and in March the defendants were notified by the proper public authorities to remove it, which they neglected to do; and in May, it being necessary to abate the nuisance, the city caused this material to be removed, at an expense of $950. This action is to secure reimbursement of the money so expended. After the fire the premises were not occupied except as the defendants used them for the separation, storage, and removal of this grain. The contract was construed by the district court as constituting a purchase by the defendants of the whole mass of what had been grain, including ashes and wheat so far burned or so affected by fire and water as to have become, according to the evidence, wholly worthless matter, without value for any purpose. They were regarded as having contracted to remove all of this matter within 30 days. They were charged with responsibility for the existence of the nuisance several months later, as we understand, because they were considered to be the *owners* of the whole mass then remaining, with the duties and responsibility, as to the public, incident to ownership.

We are of the opinion that this was not the proper construction of the contract. Reading the contract in the light of the circumstances under which it was made, it does not, as we consider, disclose an intention that the defendants' purchase should include the worthless matter, without any right of election on their part either to take it or not, and with the absolute obligation on their part to remove it from the premises, whether they wanted it or not. It is rather to be construed as a purchase of so much of the mass as they should elect to take, with a limitation of the time within which they should exercise their option and remove the property. The minds of the seller, as well as of the buyers, seem to have been directed to the *grain* which was still valuable, but "liable to further loss and damage," rather than to what had already become wholly worthless and a mere in-

cumbrance upon the premises. The purpose of the warehouseman having the custody of this grain was to realize from it what could be realized by a sale "for the account of all whom it may concern," and not to contract for the removal of ashes and other wholly worthless matter from the premises. The interests of the owners or insurers of the grain would be very different, as respects the matter under consideration, from those of the owners of the elevator premises. It was for the interest of the former that the valuable grain be sold for what it.was worth, and for what it would bring, without abatement of price consequent upon the imposition of a condition that the purchaser should *also* clear the premises where the elevator had stood of all refuse material or *debris* resulting from the fire. We see nothing in the contract indicating that such a condition was intended to be imposed or assumed. In brief, the defendants purchased, in substance, the *option* to take all of the grain remaining, 30 days being allowed for that purpose. Undoubtedly it was considered that they would, as self-interest would prompt them to do so, secure as much of the grain as possible, and the amount of this they were required to report, probably for purposes connected with the adjustment of the loss as between those interested therein. The proceedings by which it is claimed that the defendants became chargeable with liability were subsequent to the time when they had completed the work of separating and removing the grain. As to the refuse remaining upon the land, they were not then subject to the responsibility to the public incident to the ownership of property or premises, and they could not be held liable for the cost of removing the same.

Judgment reversed.